IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| U.S. ANESTHESIA PARTNERS OF TEXAS, P.A., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES., *et al.*, <br><br> Defendants. | 2:23-CV-206-Z |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion for Summary Judgment ("Motion") (ECF No. 27), filed January 19, 2024, and Defendants' Cross Motion for Summary Judgment ("Cross Motion") (ECF No. 41), filed March 1, 2024. Having reviewed the briefing and relevant law, the Court **DENIES** Plaintiffs' Motion and **GRANTS** Defendants' Cross Motion.

**BACKGROUND**

This case concerns the Centers for Medicare & Medicaid Services's ("CMS") decision to adjust Plaintiffs' Medicare reimbursement rate pursuant to the Merit-based Incentive Payment System ("MIPS"). ECF No. 28 at 8. That system "adjusts providers' Medicare rates upward or downward based on their scores in [several] categories," including cost. *Id.* To evaluate cost, "CMS uses the total per capita cost ("TPCC") measure to 'measur[e] the overall cost of care delivered to a patient[.]'" *Id.* (quoting ECF No. 38-18 at 156); ECF No. 29 at 46.

Plaintiffs bring the instant case to challenge "a serious problem" in Defendants' TPCC attribution methodology: "While CMS *excludes* specialty physicians from the TPCC measure" because "they generally are not responsible for a patient's primary care," the agency "*includes* certain non-

physician practitioners" — such as "nurse practitioners and physician assistants" — even if they "solely furnish services in a medical group comprised only of excluded physician types." ECF No. 28 at 8–9 (emphasis in original). As a result, Plaintiffs received a performance score "saddling them with a significant penalty — an expected total loss of $3.8 million" — "solely because CMS refused to exclude some of their non-physician clinicians." *Id.* at 9. In their view, Defendants' application of the TPCC measure (1) exceeded CMS's statutory authority; (2) was arbitrary and capricious; and (3) constituted an unconstitutionally excessive fine. *Id.* at 9–10.

Defendants respond with their Cross Motion, arguing that (1) judicial review of Plaintiffs' claims is precluded by statute, and that (2) even if jurisdiction exists, Plaintiffs' claims fail on the merits. ECF No. 42 at 27, 38–41. Accordingly, they claim that CMS's actions were neither arbitrary and capricious nor unauthorized by statute because, *inter alia*, the MIPS statute "unambiguously vests the Secretary with broad discretion to create an attribution methodology for the TPCC measure." *Id.* at 41. And as for Plaintiffs' Excessive Fines argument, Defendants aver that downward MIPS adjustments are neither "fines" nor "punishments" — but even if they are — they are not excessive here. *Id.* at 51–53.

**LEGAL STANDARDS**

Summary judgment is appropriate if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Per the Fifth Circuit, summary judgment "is particularly appropriate in cases in which the court is asked to review or enforce a decision of a federal administrative agency." *Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214–15 (5th Cir. 1996). To prevail, the moving party bears the initial burden of demonstrating "there is no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are considered "material" only if they "might affect the outcome of the suit under the governing law."

2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Clayton v. U.S. Xpress, Inc.*, 538 F. Supp. 3d 707, 711 (N.D. Tex. 2021).

Judicial review under the APA is limited to the administrative record. 5 U.S.C. Section 706. Agency action must "be reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). To assess whether an agency has acted arbitrarily or capriciously, a court should consider whether the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence[,]" or is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Lastly, there exists a "strong presumption that Congress intends judicial review of administrative action[.]" *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986). But that presumption may be overcome by "specific language . . . that is a reliable indicator of congressional intent . . . to preclude judicial review[.]" *Id.* at 673. When such language exists, the Court's jurisdiction is limited to "a cursory review of the merits of the case to determine whether the Secretary violated a clear statutory mandate . . . ." *Paladin Cmty. Mental Health Ctr. v. Sebelius*, 684 F.3d 527, 532 (5th Cir. 2012).

**ANALYSIS**

**I.     Judicial review of Plaintiffs' claims is statutorily precluded.**

Because this is a question of statutory interpretation, the Court begins with the text of the statute. *United States v. Lauderdale Cnty., Miss.*, 914 F.3d 960, 961 (5th Cir. 2019*)*. Congress codified the MIPS program at 42 U.S.C. Section 1395w-4(q). It provides the Secretary broad discretion to "establish an eligible professional Merit-based Incentive Payment System" and

"develop a methodology for assessing the total performance of each MIPS eligible professional[.]"

42 U.S.C. Section 1395w-4(q)(A)–(A)(i). And two of its provisions concern judicial review:

42 U.S.C. Section 1395w-4(q)(13)(B)(iii) and 1395w-4(p)(10)(C). They provide:

> Except as provided for in subparagraph (A), *there shall be no administrative or judicial review* under section 1395ff of this title, section 1395oo of this title, or *otherwise* of the following: . . . (iii) *The identification of measures and activities specified under paragraph* (2)(B) and information made public or posted on the Physician Compare Internet website of the Centers for Medicare & Medicaid Services under paragraph (9). . . . (iv) The methodology developed under paragraph (5) that is used to calculate performance scores and the calculation of such scores, including the weighting of measures and activities under such methodology.

42 U.S.C. Section 1395w-4(q)(13)(B)(iii) (emphasis added).

> There shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise of . . . the evaluation of costs under paragraph (3), including the establishment of appropriate measures of costs under such paragraph[.]

42 U.S.C. Section 1395w-4(p)(10)(C).

Both provisions preclude judicial review here. The first explicitly exempts the "identification of measures" from judicial challenge — and neither party disputes that the TPCC constitutes a "measure" under paragraph (2)(B).[1] *See* ECF No. 42 at 28 (Defendants' Cross Motion) ("TPCC is a 'measure' 'specified under paragraph (2)(B).'"); *see also* ECF No. 28 at 13 (Plaintiffs' Motion) ("The total per capita cost . . . measure is one of the two 'population-based' cost measures . . . ."). Nor can this lawsuit be understood as anything other than a challenge to the identification and application of a particular measure. Indeed, Plaintiffs conceded as much. *See* ECF No. 28 at 20 ("As applied to [Plaintiffs], the TPCC measure is unlawful[.]").

---

[1] Paragraph 2(B) concerns "[m]easures and activities specified for each category[.]" 42 U.S.C. Section 1395w-4(q)(2)(B). One of those categories, resource use — *i.e.*, costs — is explicated there. *See* 42 U.S.C. Section 1395w-4(q)(2)(B)(ii).

Likewise, the second provision forbids judicial review of "the evaluation of costs" or "the establishment of appropriate measures of costs[.]" 42 U.S.C. Section 1395w-4(p)(10)(C). Plaintiffs' claims concern both. And the applicability of this provision is not at issue, despite the fact that it was originally created as part of the Value-based Payment Modifier program ("VPM") — a predecessor to the MIPS. That is because the MIPS *explicitly* incorporated the VPM. *See* 42 U.S.C. Section 1395w-4(p)(3) ("With respect to 2019 and each subsequent year, the Secretary shall, in accordance with subsection (q)(1)(F), carry out this paragraph for purposes of subsection (q) [the MIPS program].").

That Plaintiffs' claims are precluded is supported by the structure of the statute as well. Anticipating claims such as these, Congress provided for a "targeted review" — whereby "a MIPS eligible professional may seek an informal review of the calculation of the MIPS adjustment factor (or factors) applicable to such eligible professional[.]" 42 U.S.C. Sections 1395w-4(q)(13)(A). Outside that targeted review, "there shall be no administrative or judicial review . . . or otherwise" of "[t]he identification of measures and activities specified under paragraph (2)(B)." 42 U.S.C. Sections 1395w-4(q)(13)(B)–(B)(iii). And indeed, the Fifth Circuit came to the same conclusion when confronted with virtually identical text. *See Paladin Cmty. Mental Health Ctr. v. Sebelius*, 684 F.3d 527, 531–32 (5th Cir. 2012) (holding that the phrase "[t]here shall be no administrative or judicial review" made "clear Congress's specific intent to preclude certain payment rate determinations from judicial review.").

**II.     Plaintiffs' claims — even if justiciable — fail on the merits.**

The foregoing limits this Court's jurisdiction to "a cursory review of the merits of the case to determine whether the Secretary violated a clear statutory mandate." *Paladin*, 684 F.3d at 532. Plaintiffs allege that the TPCC measure is unlawful for three reasons: (1) "CMS exceeded its

5

statutory authority by applying this measure to [P]laintiffs and, in doing so, assessing their performance based on the performance of other providers over whom [P]laintiffs have no control;" (2) "CMS's decision to attribute beneficiaries to physician extenders at excluded specialty groups contradicts CMS's own rationale for using the TPCC and was not reasonably explained, and is therefore arbitrary and capricious;" and (3) "applying the TPCC measure to [P]laintiffs violates the Excessive Fines Clause of the Eighth Amendment because it results in a punitive sanction that bears no relationship to [P]laintiffs' conduct." ECF No. 28 at 20. All three claims fail.

### A.  CMS did not exceed its statutory authority.

Plaintiffs' first argument is straightforward: "[W]hen CMS attributes beneficiaries to a clinician who has no control over total patient costs," it is "assessing the performance of the provider based on the cost-generating conduct of others." ECF No. 28 at 20. And in Plaintiffs' view, the MIPS statute "gives CMS no authority to do so." *Id.*

The provision at issue is 42 U.S.C. Section 1395w-4(q)(1)(A)(i). It reads:

> Subject to the succeeding provisions of this subsection, the Secretary shall establish an eligible professional Merit-based Incentive Payment System (in this subsection referred to as the "MIPS") under which the Secretary shall . . . (i) develop a methodology for assessing the total performance of each MIPS eligible professional according to performance standards under paragraph (3) for a performance period (as established under paragraph (4)) for a year[.]

42 U.S.C. Section 1395w-4(q)(1)(A)(i).

Plaintiffs aver that "the text and context . . . confirm that CMS cannot assess a clinician's performance based on the behavior of others." ECF No. 28 at 21. That is because the "use of the word 'of' denotes ownership." *Id.* (quoting *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 788 (2011)). Accordingly, the only reason Congress would have used this language is "to make clear that the only performance that matters is the performance that 'belongs to' the clinician being assessed." ECF No. 28 at 21. Or so Plaintiffs say.

But Plaintiffs' interpretation is flawed. First, nothing in the statutory text prohibits the Secretary from attributing total patient costs to individual clinicians. On the contrary, it states that cost measures should (1) "eliminate the effect of geographic adjustments in payment rates;" (2) "take into account risk factors"; and (3) be based on "other factors determined appropriate by the Secretary" — but only "to the extent *practicable*." 42 U.S.C. Section 1395w-4(p)(3) (emphasis added). And "practicable" means what it has always meant: "reasonably capable of being accomplished" or "feasible in a particular situation." *Practicable*, BLACK'S LAW DICTIONARY (11th ed. 2019). Hence, even accepting *arguendo* that the MIPS forbids assessing a clinician's performance "based on [others'] conduct," it does so only "to the extent practicable."[2] ECF No. 28 at 20; 42 U.S.C. Section 1395w-4(p)(3). If Congress intended a harsher rule, "one would expect it to have said so[.]" *Russello v. United States*, 464 U.S. 16, 25 (1983). It did not.

Second, Plaintiffs' interpretation is incompatible with the broad discretion granted to the Secretary. As referenced *supra*, the MIPS authorizing statute directs the Secretary to "develop a methodology" for "assessing the total performance of each MIPS eligible professional." 42 U.S.C. Section 1395w-4(q)(1)(A)(i). That methodology, in turn, should evaluate costs "based on a composite" of "measures of costs established by the Secretary . . . ." 42 U.S.C. Section 1395w-4(p)(3) (incorporated in 42 U.S.C. Section 1395w-4(q)(2)(B)(ii)).

Notwithstanding the "practicable" restrictions described above, the only real statutory constraint is that the cost measures be "appropriate." 42 U.S.C. Section 1395w-4(p)(3). And construing the word "appropriate" as a *constraint* is itself a stretch. *See Mich. v. E.P.A.*, 576

---

[2] *See also* 82 Fed. Reg. 53568, 53647 (explaining that the MIPS "do[es] not use a single attribution method — instead the attribution method is linked to a measure and *attempts* to *best* identify the clinician *who may have influenced the spending* for a patient[.]") (emphasis added).

7

U.S. 743, 752 (2015) ("'[A]ppropriate' is 'the classic broad and all-encompassing term that naturally and traditionally includes consideration of all the relevant factors.'"); *see also Associated Builders & Contractors of Tex., Inc. v. Nat'l Lab. Rels. Bd.*, 826 F.3d 215, 222 (5th Cir. 2016) ("[T]he phrase '*appropriate* hearing upon due notice' is deliberately expansive and [indicates] that Congress intended to 'confer[] broad discretion[.]'") (emphasis added).

Congress explicitly authorized the Secretary to determine — in his discretion — the "other factors" that bear on the cost measure. 42 U.S.C. Section 1395w-4(p)(3). The foregoing analysis makes that clear. In sum, the TPCC measure is statutorily authorized.

### B. The TPCC measure, as applied to Plaintiffs, is neither unlawful nor arbitrary and capricious.

Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. Section 706(2)(A). "[A] court may not substitute its own policy judgment for that of the agency." *Id.* Rather, "[a] court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.* Indeed, "[j]udicial review under that standard is deferential," and merely requires "that agency action be reasonable and reasonably explained." *Fed. Commc'ns Comm'n*, 141 S. Ct. at 1158. To assess whether an agency has acted arbitrarily or capriciously, a court should consider whether the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence[,]" or is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

8

Here, Plaintiffs contend that "[e]ven if the TPCC measure's attribution rule were a permissible interpretation of the statute, it would still be unlawful because it is not the product of reasoned decisionmaking." ECF No. 28 at 25. That is because, per Plaintiffs, "CMS's decision to apply a metric intended to measure clinicians who manage overall patient care to clinicians CMS knew do *not* manage patient care violates . . . basic tenet[s] of reasoned decisionmaking." *Id.* (emphasis in original). Defendants respond that — on the contrary — the record demonstrates "a years-long iterative process" whereby CMS "weighed the cost and benefits of attributing non-physician costs to specialty practices and," after "making changes through rulemaking, rationally decided to attribute total costs to clinicians, including nurse practitioners and physician assistants," that bill Medicare "for providing primary care services to Medicare patients." ECF No. 42 at 47.

Plaintiffs' arguments fall short. First, it is incorrect to posit — as they do — that CMS "dismissed [their] concern in a single conclusory sentence." ECF No. 28 at 15. Rather, CMS explicated in the November 2019 Final Rule why "it is appropriate to attribute [patient costs to] clinicians and clinician groups that appear to provide primary care services in the claims data[.]" 84 Fed. Reg. 62568, 62792. Specifically, CMS explained that "using claims data was particularly advantageous in the context of the TPCC measure" because (1) it "avoids placing a reporting burden on clinicians;" (2) it provides "a comprehensive set of data on TPCC cost performance;" and (3) it ensures that most clinicians "benefit from the information provided on TPCC cost performance." ECF Nos. 42 at 48; 38-19 at 712.

Second, CMS reasoned that "if patients also saw other primary care providers within the relevant timespan, as is likely for the patient costs assigned to Plaintiffs, total monthly patient costs would also be assigned to those other primary care clinicians." ECF Nos. 42 at 49; 38-18 at 657. By "attributing total costs to multiple physicians," CMS "intended to encourage care

9

coordination." ECF No. 42 at 49. And "because the TPCC compares each clinician's expected costs among their peers for patients with the same observable characteristics . . . no costs are double counted." *Id.*; *see also* ECF No. 38-15 at 343 ("[I]n the case where a sampled organization is part of a broader organization . . . we propose to ask the respondents to report an allocated portion of the relevant . . . costs from the broader parent organization level in separate questions in several places in the cost sections of the data collection instrument[.]"); *id.* ("From a design perspective, we believe it is less important where a particular cost is reported on the survey data collection instrument and more important that the cost is reported only once.").

Lastly, CMS explained that it "assessed the frequency of [tax identification numbers] being attributed solely th[r]ough physician assistants and nurse practitioners, and that this occurs infrequently." ECF No. 42 at 50. And the data support that conclusion. *See id.* ("[F]or all group practices where a majority of clinicians were excluded specialists, 13.3% were attributed costs based on services exclusively provided by nurse practitioners or physician assistants. . . . However, 7.8% of this total comes from practice groups comprised of a majority of nurse practitioners or physician assistants."). Moreover, "[f]or groups with specialties not primarily consisting of nurse practitioners or physician assistants, only 5.5% of all TINs were attributed costs based on services exclusively provided by the specialty practice's nurse practitioners or physician assistants." *Id.*

The data do not undermine — and certainly do not foreclose — Defendants' rationale for applying the TPCC to Plaintiffs. CMS thoroughly explained that it "excluded specialty clinicians, like anesthesiologists, because they are *unlikely* to provide primary care services — not because they or their practices *never* provide primary care services." *Id.* (emphasis in original). And CMS's finding "that 5.5% of attribution to excluded specialties occurs solely through nurse practitioners and physician assistants" supports CMS's reasoning "for including nurse practitioners and

10

physician assistants who provide primary care services in a non-primary care setting." *Id.* None of the foregoing rationales violates the statutory command to establish cost measures based on "factors determined appropriate by the Secretary" to "the extent *practicable*." 42 U.S.C. Section 1395w-4(p)(3) (emphasis added).

In sum, it is Plaintiffs who bear "the burden of proving that the agency's determination was arbitrary and capricious." *Medina Cnty. Env't Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 699 (5th Cir. 2010). They have failed to do so here.

### C. Application of the TPCC measure did not violate the Eighth Amendment.

Lastly, Plaintiffs argue that the TPCC measure — as applied to them — violates the Excessive Fines Clause of the Eighth Amendment. ECF No. 28 at 27. In their view, (1) downward MIPS adjustments are punitive monetary sanctions, and (2) their $3.8 million reimbursement cut is grossly disproportionate. *Id.* at 27–29. Defendants respond that downward MIPS adjustments are neither "fines" nor "punishments" for Eighth Amendment purposes — but even if they are — they are not excessive as applied to Plaintiffs. ECF No. 42 at 51–53.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. Its purpose was "to limit the government's power to punish." *Austin v. United States*, 509 U.S. 602, 609 (1993). Likewise, "at the time of the drafting and ratification of the Amendment, the word 'fine' was understood to mean a payment to a sovereign as punishment for some offense." *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989).

Plaintiffs cite no caselaw for the proposition that downward MIP payment adjustments — or payments to Medicare of any sort — constitute "payment[s] to a sovereign." They instead cite cases concerning categories that have long been considered such payments. *See, e.g., Grashoff v.*

11

*Adams*, 65 F.4th 910, 913 (7th Cir. 2023) (forfeiture of unemployment benefits with a penalty); *Timbs v. Indiana*, 139 S. Ct. 682, 686 (2019) (forfeiture of a vehicle); *Austin*, 509 U.S. at 602 (forfeiture of a vehicle); *Korangy v. FDA*, 498 F.3d 272, 277–78 (4th Cir. 2007) (monetary penalties for failing to abide by statutory certification requirements). None of the foregoing bear facts remotely similar to the instant case.

Moreover, whatever support exists for calling downward MIP payment adjustments "fines," there is even less for calling them "punishments." Never before has the Supreme Court categorized a civil penalty as an Eighth Amendment punishment *unless* that penalty was assessed as a post-conviction sanction or against property used in criminal activity. *See, e.g., Bajakajian*, 524 U.S. at 325; *Austin*, 509 U.S. at 622; *Korangy*, 498 F.3d at 277. The Court declines to disturb that precedent today.

### CONCLUSION

Plaintiffs' Motion is **DENIED** and Defendants' Cross Motion is **GRANTED**.

**SO ORDERED**.

March 25, 2024

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE